UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Scott Phillip Flynn,  Case No. 22-cv-1265 (ECT/LIB)

      Petitioner,

v.  **REPORT AND RECOMMENDATION**

B. Eischen,

      Respondent.

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general referral for report and recommendation in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1, as well as, upon Petitioner Scott Phillip Flynn's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. [Docket No. 1].

For the reasons set forth herein, the Court recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED**, and this action be **DISMISSED** without prejudice.

### I.  Background

Petitioner was convicted in the United States District Court for the District of Minnesota for one count of conspiracy to defraud the United States and one count of filing a false tax return.[1] (Colston Decl., [Docket No. 11], at ¶ 4). On January 24, 2019, Petitioner was sentenced to 87 months of imprisonment. (Id. at ¶ 7).

Petitioner is currently incarcerated at the Federal Prison Camp Duluth ("FPC Duluth"). (Petition, [Docket No. 1]). He has a projected release date of March 27, 2025, via the current good conduct time calculation. (Colston Decl., [Docket No. 11], at ¶ 4).

---

[1] On December 30, 2016, Petitioner was arrested by the United States Marshal Service for these pending charges under federal case number 16-CR-347 (ADM/KMM), and he was released from federal custody the same day on bond. (Colston Decl., [Docket No. 11], at ¶ 5).

On May 9, 2022, Petitioner initiated the present action by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, [Docket No. 1], in this Court.

## II. Standard of Review

A federal prisoner may petition a federal district court for relief pursuant to 28 U.S.C. § 2241 when challenging the execution of his sentence or the length or duration of his confinement. Jones v. Jett, No. 10-cv-4201 (MJD/AJB), 2011 WL 5507222, at *2 (D. Minn. Aug. 12, 2011), report and recommendation adopted by 2011 WL 5408009 (D. Minn. Nov. 8, 2011), aff'd, 470 F. App'x 522 (8th Cir. 2012) (citing Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002); Mcintosh v. U.S. Parole Com'n, 115 F.3d 809, 812 (10th Cir. 1997) (holding that a federal inmate's challenge to a loss of good time credit is properly brought under Section 2241 because it is a challenge to an action affecting the fact or duration of the petitioner's custody)). "A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court." Matheny, 307 F.3d at 711.

## III. Analysis

Petitioner argues that he has been incarcerated past his projected release date because, despite completing "programming and work activities," Petitioner's "[e]arned First Step Act credits [("FTCs") have] not being applied to [his] percentage of term served" and "only a portion of [his] [e]arned [Good Credit Time ("GCTs")] ha[ve] been applied." (Petition, [Docket No. 1], at pp. 7-8; Reply, [Docket No. 14]). Petitioner further asserts that he has not been provided with a "summary, calculation or computation summary" of his FTCs. (Petition, [Docket No. 1], at p. 8). As such, Petitioner requests that the Court order the Bureau of Prisons ("BOP") to immediately calculate and apply his FTCs and GCTs to expedite his release date for placement in the BOP's

Elderly Offender Home Detention Program (the "Elderly Offender Program") or home confinement. (Petition, [Docket No. 1], at p. 9; Pet.'s Reply, [Docket No. 14], at pp. 2-3).

Respondent argues that Petitioner has failed to exhaust his administrative remedies, and that even if he had properly exhausted, his request to have his FTCs and GCTs calculated and immediately applied to his sentence computation is either moot or premature. (Response, [Docket No. 10]). The Court will first address Respondent's argument that Plaintiff failed to exhaust his administrative remedies.

### A. Exhaustion of Administrative Remedies

It is well established that a federal prisoner seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2241 must first exhaust the administrative remedies available to him. See Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). Federal regulations afford prisoners administrative review of the computation of their credits. United States v. Wilson, 503 U.S. 329, 335 (1992) (citing 28 C.F.R. §§ 542.10-.16). Prisoners are able to seek judicial review of these computations "after exhausting their administrative remedies." Id. (citing United States v. Bayless, 940 F.2d 300, 304-05 (8th Cir. 1991)).[2]

---

[2] The BOP's Administrative Remedy Program exists "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. The process is a multi-step one. First, an inmate must "present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." Id. at § 542.13(a). Second, if the issue is not resolved, the inmate must submit a "formal written Administrative Remedy Request" at the institutional level. Id. at § 542.14(a). Third, "[a]n inmate who is not satisfied with the Warden's response may submit an Appeal. . . to the appropriate Regional Director." Id. at § 542.15(a). Fourth, "[a]n inmate who is not satisfied with the Regional Director's response may

3

The exhaustion requirement is not jurisdictional. See Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007). It is, however, generally enforced absent circumstances which justify an exception. See, e.g., Masri v. Watson, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891 (D. Minn. Feb. 17, 2017) (denying habeas petition for failure to exhaust all available administrative remedies); Knox v. United States, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940 (D. Minn. Oct. 13, 2016) (same); Aguilar v. United States, No. 15-cv-487 (SRN/JSM), 2015 WL 5719166, at *2 (D. Minn. Sept. 29, 2015) (noting that "habeas petitioners can be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose"). The Eighth Circuit has held that a Federal District Court may err by considering the merits of a petition for a writ of habeas corpus when the petitioner "failed to demonstrate he had" properly exhausted his administrative remedies prior to seeking habeas corpus relief. See United States v. Thompson, 297 F. App'x 561, 562 (8th Cir. 2008). There are exceptions, however, to the exhaustion requirement for habeas petitioners, including when requiring a habeas petitioner to exhaust all available administrative remedies would be futile and serve no useful purpose. See Aguilar, 2015 WL 5719166, at *2. Courts have also excused the exhaustion requirement when the issues raised in the action are time-sensitive and may become moot without expeditious judicial resolution. See Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *3-4 (D. Minn. March 10, 2016).

In the present case, Petitioner appears to contend that, if his FTCs and GCTs are not calculated and immediately applied, he will remain incarcerated past his projected release date. (Petition, [Docket No. 1]; Reply, [Docket No. 14]). The Petition indicates that Petitioner "[t]alked with [a] BOP Case Manager about FSA credits [but] [w]as [t]old: 'There [was] nothing [they

---

submit an Appeal . . . to the General Counsel." Id. An inmate may seek judicial review only after exhausting each of these steps. Wilson, 503 U.S. at 335; see also Woodford v. Ngo, 548 U.S. 81, 90 (2006).

could] do.'" (Petition, [Docket No. 1], at p. 3).  The Petition also indicates that Petitioner "[t]alked with BOP Administration about having FSA credits issued and applied [but] [w]as informed: '[they were] waiting on region.'"  (Id. at p. 4).  However, the Petition does not indicate that Petitioner has exhausted the administrative remedies available to him.  (Petition, [Docket No. 1], at pp. 3-5).  Indeed, Respondent has submitted a BOP record providing that Petitioner had not filed any administrative remedies as to his allegedly uncalculated and unapplied FTCs and GCTs. (Colston Decl., [Docket No. 11], at ¶ 12; Exhibit F, [Docket No. 12-6]).  Furthermore, Petitioner asserts no argument as to why exhaustion of administrative remedies would be futile or that the requirement should be excused on some other basis.  (See Reply, [Docket No. 14]).

Nevertheless, the Court finds that the time-sensitive nature of Petitioner's claim, combined with the relative ease of their resolution, persuades the undersigned to recommend that the Court excuse the exhaustion requirement and address Petitioner's claims.

**B. First Step Act Time Credits**

Petitioner first seeks to have his First Step Act time credits ("FTCs") calculated and immediately applied in order to reduce his percent of statutory term served.[3]  (Petition, [Docket No. 1]).  Respondent asserts that, even if Petitioner had exhausted his administrative remedies, his claim under 18 U.S.C. § 3624(g) should be dismissed as premature because his FTCs do not yet equal the remainder of his term of imprisonment, and until that time, his FTCs could be reduced by, among other things, disciplinary action.  (Response, [Docket No. 10], at pp. 17-19).

---

[3] To the extent Petitioner seeks to have his First Step Act Time Credits calculated, this request is moot because the BOP has calculated that Petitioner has earned 570 days of FTCs as of May 10, 2022.  (Response, [Docket No. 10], at pp. 16-17; Winger Decl., [Docket No. 12], at ¶ 11).  See In re Sec. Life Ins. Co. of Am., 228 F.3d 865, 869-70 (8th Cir. 2000) (citing In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996) ("The existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of federal courts . . . [I]f during the pendency of an appeal, an event occurs which destroys the court's ability to render the prevailing party any effectual relief whatsoever, the appeal must be dismissed as moot.") (citations and quotations omitted)).

Congress enacted the First Step Act ("FSA") on December 21, 2018. See Pub. L. No. 115-391, 132 Stat. 5194. The Act required the Attorney General to establish a "risk and needs assessment system" that, among other things, would offer "evidence-based recidivism reduction programs or productive activities" to prisoners. 18 U.S.C. § 3632(a). Eligible prisoners who successfully participated in this programming could then earn certain rewards, including time credits to "be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(A), (C).[4] A prisoner is only eligible to have their time credits applied if they meet certain criteria under 18 U.S.C. § 3624(g).[5] That is, the FSA limits an inmate's ability to apply his FTCs only when he has earned time credits that are equal to the remainder of his sentence. See 18 U.S.C. § 3624(g)(1)(A). If this eligibility is met, then the prisoner may have his time credits applied toward pre-release custody or supervised release. 18 U.S.C. § 3632(d)(4)(A), (C). When a prisoner's total time credits equal the remainder of the time on his sentence, the BOP will then determine if he still meets the criteria to have his time credits applied to his sentence for an earlier transfer to a pre-release residential reentry center or home confinement placement or an early release. See 18 U.S.C. § 3632(d)(4)(C); see also 18 U.S.C. § 3624(g).

---

[4] On June 25, 2021, the BOP issued Program Statement 5400.01, the "First Step Act Needs Assessment," which provided information on how to add needs information to the risk and needs assessment process and refer inmates to appropriate programs. (Winger Decl., [Docket No. 12], at ¶ 6). The thirteen needs areas identified were: anger/hostility, antisocial peers, cognitions, dyslexia, education, family/parenting, finance/poverty, medical, mental health, recreation/leisure/fitness, substance abuse, trauma, and work. (Id.). These needs are dynamic factors that could change over time. (Id.). Under Program Statement 5400.01, BOP staff assess an inmate's needs based on a review of their pre-sentence investigation report, education records, and medical records, as well as, the inmate's completion of standardized instruments, i.e., Brief Anger Aggression Questionnaire (anger/hostility). (Id.).

[5] This set of criteria includes having accumulated time credits in an amount that is equal to the remainder of his imposed term of imprisonment:

> (1) Eligible prisoners.—This subsection applies in the case of a prisoner (as such term is defined in section 3635) who—
> > (A) has earned time credits under the risk and needs assessment system ... in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

18 U.S.C. § 3624(g)(1)(A).

6

Here, Petitioner was found eligible to earn First Step Act time credits ("FTCs") under 18 U.S.C. § 3632(d). (Winger Decl., [Docket No. 12], at ¶ 4). In February 2020, Petitioner's risks and needs were assessed and he was assigned a PATTERN[6] score of "Minimum." (Id. at ¶ 5). Because BOP was still in the process of incorporating FTC tracking capabilities into the SENTRY[7] database and updating sentencing computations for those prisoners with earlier release dates, Petitioner's sentencing computation had not yet been updated as of the date Petitioner filed his habeas petition. (Id. at ¶ 10). However, in its response, BOP calculated that Petitioner had earned 570 days of FTCs, as of May 10, 2022. (Id. at ¶ 11). Petitioner also has a projected release date of March 27, 2025, via GCT release. (Id. at ¶ 3). Therefore, Petitioner does not have enough time credits equal to the remainder of his imposed term of imprisonment.

Accordingly, Petitioner is ineligible to have his time credits applied.[8] See, e.g., Mills v. Starr, No. CV 21-1335 (SRN/BRT), 2022 WL 4084178, at *4 (D. Minn. Aug. 17, 2022), report and recommendation adopted, No. 21-CV-1335 (SRN/BRT), 2022 WL 4080750 (D. Minn. Sept. 6, 2022) (recommending that the petitioner's habeas petition to apply FTCs be denied because the petitioner's time credits were not in an amount that was equal to the remainder of his imposed term

---

[6] PATTERN stands for Prisoner Assessment Tool Targeting Estimated Risk and Need, a tool that measures an inmate's propensity to reoffend. See U.S. Dep't of Justice, "The First Step Act of 2018: Risk and Needs Assessment System."
[7] The BOP maintains a database known as the SENTRY Inmate Management System ("SENTRY").
[8] Petitioner also appears to argue in his Petition and in his reply that application of his FTC time credits would render him eligible for immediate release to the Elderly Offender Program under the CARES Act because he is age 60 and has served over two-thirds of his sentence. (Petition, [Docket No. 1]; Reply, [Docket No. 14]). However, this argument is without merit. As discussed, supra, Petitioner is not eligible to have his FTCs applied because these credits do not equal the remainder of his imposed term of imprisonment. Furthermore, the Court finds that Petitioner is not now eligible for the Elderly Offender Program because he has not yet served two-thirds of his sentence. (See Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3) (providing Petitioner's elderly offender release date as November 22, 2023); see also 34 U.S.C. § 60541(g)(1). Moreover, to the extent Petitioner seeks release to the Elderly Offender Home Program or home confinement, the Court lacks the authority to consider his request. Courts in this District have continually held that the BOP has exclusive authority to determine the placement of prisoners. See, e.g., Machipiness v. B. Birkholz, No. 21-CV-1668 (JRT/ECW), 2021 WL 8363203, at *6 (D. Minn. Dec. 6, 2021), report and recommendation adopted sub nom., 2022 WL 1284772 (D. Minn. Apr. 29, 2022); Williams v. Birkholz, No. 20-CV-2190 (ECT/LIB), 2021 WL 4155614, at *3 (D. Minn. July 20, 2021), report and recommendation adopted, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). Neither the CARES Act nor the FSA alters this authority. See United States v. James, Cr. No.15-255 (SRN), 2020 WL 1922568 at *2 (D. Minn. Apr 21, 2020); United States v. Kluge, Cr. No. 17-61 (DWF), 2020 WL 209287 at *4 (D. Minn. Jan 14, 2020).

7

of imprisonment); Mark v. Birkholz, No. 21-CV-1418 (KMM/DTS), Doc. No. 32 (D. Minn. Aug. 4, 2022) (same).

Therefore, to the extent Petitioner seeks an Order of the Court to have his FTCs applied to reduce his percent of statutory time served, the Court recommends this claim be **DENIED** and that it be **dismissed without prejudice**.

### C. Good Conduct Time Credits[9]

Petitioner next seeks an Order of this Court requiring the BOP to apply the "Total GCT Earned" of 162 days to his "percentage of sentence satisfied."[10] (Petition, [Docket No. 1], at p. 8; Sentence Monitoring Computation Data, [Docket 1-1], at p. 2). However, the BOP has provided documentation providing that Petitioner's earned GCTs have been applied to his "Percent of Statutory Term Served." (Response, [Docket No. 10], at p. 20; Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3). As such, Respondent asserts that this argument should be dismissed as moot.

For brief background, when FSA was enacted on December 21, 2018, it amended 18 U.S.C. § 3264(b). Before said amendment, 18 U.S.C. § 3264(b), as interpreted by the BOP, provided that 47 days of good conduct time was to be credited for each year of imprisonment served, not for the term of imprisonment imposed by the Court. See Barber v. Thomas, 560 U.S. 474, 477-80 (2010)

---

[9] GCTs are different than FTCs or time credits under the First Step Act. GCTs reduce a prisoner's actual time in BOP custody by awarding credit toward the service of the prisoner's sentence. 18 U.S.C. § 3624(b). However, FTCs, instead, provide an extra incentive for inmates to participate in evidence-based recidivism reduction programs or productive activities by providing time credits that can be applied toward prerelease custody or supervised release. 18 U.S.C. § 3632(d)(4)(A), (C).

[10] When FSA was enacted on December 21, 2018, it amended 18 U.S.C. § 3264(b). Before said amendment, 18 U.S.C. § 3264(b), as interpreted by the BOP, provided that 47 days of good conduct time was to be credited for each year of imprisonment served, not for the term of imprisonment imposed by the Court. See Barber v. Thomas, 560 U.S. 474, 477-80 (2010) (explaining and finding permissive the BOP's calculation method). Pursuant to that calculation method, as upheld by the Supreme Court of the United States, prisoners received 47 days of good time credit per year of actual imprisonment. See Id. at 479. Section 102(b)(1) of the FSA amended 18 U.S.C. § 3624(b) to change the way good conduct credits were calculated by increasing the maximum allowable good conduct time from 47 to 54 days per year. Specifically, the Act permits federal inmates to earn 54 days of good conduct time for each year of the sentence imposed by the Court, as opposed to each year served.

(explaining and finding permissive the BOP's calculation method). Pursuant to that calculation method, as upheld by the Supreme Court of the United States, prisoners received 47 days of good time credit per year of actual imprisonment. See Id. at 479. Section 102(b)(1) of the FSA amended 18 U.S.C. § 3624(b) to change the way good conduct credits were calculated by increasing the maximum allowable good conduct time from 47 to 54 days per year. Specifically, the Act permits federal inmates to earn 54 days of good conduct time for each year of the sentence imposed by the Court, as opposed to each year served.

GCT is tracked on an inmate's sentence computation as "Total GCT Earned and Projected" and "Total GCT Earned." (Colston Decl., [Docket No. 11], at ¶ 13). The amount of "Total GCT Earned" represents the actual amount of GCTs the inmate has earned as of the date the sentence computation is run in the SENTRY database. (Id.). Whereas the amount of "Total GCT Earned and Projected" represents the total amount of GCT the inmate can earn on his sentence less any GCT loss because of disciplinary sanctions. (Id.). The "Total GCT Earned and Projected" is included when setting an inmate's "Statutory Release Date Projected" and in the "Percentage of Statutory Term Served." (Id.).

Here, Petitioner was sentenced to an 87-month term of imprisonment on January 24, 2019. (Colston Decl., [Docket No. 11], at ¶ 7). Pursuant to the FSA, Petitioner has been earning 54 days of GCTs each year since the commencement of his sentence. (Id. at ¶ 14). As such, as of June 15, 2022, Petitioner has earned 162 days of GCT. (See Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3). Petitioner is also projected to earn 391 days of GCT before his release. (Colston Decl., [Docket No. 11], at ¶ 16; Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3). Taking Petitioner's 391 days of earned and projected GCTs, Petitioner has served 54.9% of his statutory term, as of June 15, 2022, which is reflected in his

9

Public Information Inmate Data form.[11]  (Colston Decl., [Docket No. 11], at ¶ 16; see also Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3).  Further, Petitioner's earned and projected GCTs of 391 days are included in Petitioner's projected release date of March 27, 2025.  (Colston Decl., [Docket No. 11], at ¶ 17; see also Petitioner's Public Information Inmate Data Sheet, [Docket No. 11-1], at p. 3). Therefore, Petitioner's earned GCTs, as well as his projected GCTs, are being applied to his to sentence computation, pursuant to the First Step Act.  Accordingly, the Court finds that Petitioner's GCT claim is moot.[12]

Even assuming solely for the sake of argument that this Court found that Petitioner's claim had merit, there is no longer any meaningful relief which this Court could provide. Petitioner sought the application of his GCTs to his percentage of sentence satisfied, and the BOP has established that his GCTs have been applied as Petitioner sought to have done.  Therefore, this part of the Petition is now moot because there is no longer any live case or controversy to be resolved in the present case.  This Court and other Courts in this District have reached this same conclusion in circumstances materially similar to the present case.  See, e.g., Van Zyverden v. Marques, No. 19-CV-948 (ECT/LIB), 2020 WL 439908, at *3 (D. Minn. Jan. 8, 2020), report and

---

[11] This calculation also includes a one-day prior custody credit from his arrest on December 30, 2016.  (Colston Decl., [Docket No. 11], at ¶¶ 5, 15).

[12] Article III of the United States Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies.  See Am. United for Separation of Church and State v. Prison Fellowship Ministries, 509 F.3d 406, 420-21 (8th Cir. 2007); Powell v. McCormack, 395 U.S. 486, 497 (1969); Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1086 (2011). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." Potter v. Norwest Mortgage, Inc., 329 F.3d 608, 611 (8th Cir. 2003) (quotations omitted); see Roberts v. Norris, 415 F.3d 816, 819 (8th Cir. 2005); Arizonans for Official English v. Arizona, 520 U.S. 43, 45 (1997).  The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action. See In re Sec. Life Ins. Co. of Am., 228 F.3d 865, 869-70 (8th Cir. 2000) (citing In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996) ("The existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of federal courts . . . [I]f during the pendency of an appeal, an event occurs which destroys the court's ability to render the prevailing party any effectual relief whatsoever, the appeal must be dismissed as moot.") (citations and quotations omitted)).  If it becomes impossible for the Court to provide any further redress for the claims that have been raised, the case must be dismissed as moot. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990) ("To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision.").

recommendation adopted, No. 19-CV-948 (ECT/LIB), 2020 WL 438355 (D. Minn. Jan. 28, 2020); Dudgeon v. Rios, 19-cv-1489 (SRN/DTS), Order, [Docket No. 17], (D. Minn. Aug. 19, 2019); Pritchard v. Marques, No. 19-cv-1242 (WMW/BRT), 2019 WL 5023208, at *2 (D. Minn. Aug. 19, 2019), report and recommendation adopted, 2019 WL 4957905 (D. Minn. Oct. 8, 2019).

Accordingly, to the extent Petitioner seeks an Order directing BOP to calculate and apply his GCTs to his percentage of sentence satisfied, the Court recommends this claim be **DENIED** and that it be **dismissed without prejudice**.

## IV.   Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. The Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED;** and

2. This action be **DISMISSED without prejudice.**

Dated: October 26, 2022                              s/Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).